Affirmed and Opinion filed August 17, 2006








Affirmed and Opinion filed August 17, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00965-CR

____________

 

ROBERT HARRIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause No. 995,582

 



 

O P I N I O N








Appellant, Robert Harris, appeals his conviction for felony
Driving While Intoxicated (DWI). Tex.
Pen. Code Ann. '' 49.04, 49.09(b)(2) (Vernon 2003). After
pleading not guilty by reason of insanity, appellant was found guilty by a
jury. Prior to trial, appellant elected to have the trial court determine his
punishment in the event he was convicted. Pursuant to the habitual felony
offenders statute, the trial court sentenced appellant to twenty- five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice. Tex. Pen. Code Ann. ' 12.42(d) (Vernon
Supp. 2005). Appellant asserts four issues on appeal: (1) the evidence is
factually insufficient to sustain a verdict of guilty; (2) it was improper to
use one of appellant=s prior DWI convictions in the
jurisdictional enhancement as it was more than ten years old; (3) the State
improperly used the same prior DWI conviction in the jurisdictional enhancement
and for assessing the punishment; and (4) the sentence imposed on appellant
violates the doctrine of proportionality. We affirm.

Factual and Procedural Background

Early on the morning of January 2, 2004, appellant was
clocked driving north on the Southwest Freeway at more than ninety miles per
hour. After appellant pulled over onto the narrow left hand shoulder of the
freeway, Houston Police Officer Ciers, using the patrol car=s loudspeaker,
instructed appellant to pull off the freeway four times. However, appellant did
not pull his vehicle off the freeway and remained on the narrow shoulder. When
Officer Ciers approached appellant=s vehicle, he
smelled a strong odor of alcohol and observed that appellant had a starry-eyed
look to his bloodshot eyes. After appellant was unable to produce his driver=s license, Officer
Ciers asked appellant to step to the back of his vehicle. Ciers observed
appellant stagger and noticed the alcohol odor was emanating from appellant. At
the time he was stopped by Officer Ciers, appellant denied he had consumed any
alcohol. However, during trial, appellant admitted to drinking two beers and at
least a full bottle of Nyquil cold medicine earlier that evening.[1]








Officer Ciers, a ten-year veteran of the Houston Police
Department (HPD), worked in the Traffic Enforcement Division and had completed
a forty-hour DWI course. Included in this course was training on how to
determine if a driver was intoxicated, as well as how to administer field
sobriety tests to an intoxicated driver.[2]
Initially, Officer Ciers administered a horizontal gaze nystagmus (HGN) test.
Appellant exhibited all six possible clues of intoxication during the HGN test.
Officer Ciers next attempted to administer the one-leg-stand field sobriety
test to appellant. Appellant asked Officer Ciers to repeat the instructions
four times before claiming he was unable to perform the test as a result of bad
knees. Officer Ciers did not attempt to administer the walk-and-turn field
sobriety test as he determined appellant would not be able to perform the test
due to his bad knees.[3]
In Officer Ciers= opinion, appellant was intoxicated and he
placed appellant in the back of his patrol car.

Officer Ciers took appellant to the Houston Police Station
where appellant agreed to provide a breath sample. Officer Mock, a certified
intoxilyzer operator, administered the breath-tests after observing appellant
for fifteen minutes.[4]
Appellant=s two breath-tests, taken approximately one hour after
he was initially stopped, indicated an alcohol concentration of .159 and .153.
Officer Mock observed that appellant=s speech was
slurred and his eyes were bloodshot, and it was his opinion that appellant was
intoxicated.








During appellant=s trial, in
addition to Officers Ciers and Mock, Rick Viser testified. Viser is a
Criminalist II, technical supervisor with the HPD crime laboratory working in
the breath-test program.[5]
Viser=s primary duty is
to maintain the integrity of HPD=s breath-test
program. Specifically, his duties include making certain the operators are
trained and supervised and to make sure the Intoxilyzer 5000 machines used in
the breath-testing program are operating at all times. The Intoxilyzer 5000
machines used by HPD are approved and certified by the Texas Department of
Public Safety. In addition, the overall HPD breath alcohol testing program is
certified by the Texas Department of Public Safety. Viser remotely inspects the
Intoxilyzer 5000 machines twice a week, and he physically inspects each machine
once a month. It was Viser=s opinion the Intoxilyzer 5000 machine
used to test appellant was operating properly on January 2, 2004. After
reviewing appellant=s breath-test results and using a process
called retrograde extrapolation, it was Viser=s opinion
appellant was legally intoxicated at the time he was driving his motor vehicle.[6]

Prior to resting, the State introduced into evidence
certified copies of records establishing that appellant had been convicted of
two prior DWI offenses. The first, a misdemeanor, in 1989 and the second, a
felony, in 1995.








Against his trial counsel=s advice,
appellant testified in his own defense. Appellant admitted he had five prior
DWI convictions (three in 1989, one in 1994, and one in 2001), a conviction for
possession of a controlled substance in 1989, and a robbery conviction in 1991.
Appellant testified he got off work at midnight on January 1, 2004 and he
consumed two beers and a bottle of Nyquil prior to going to bed around 2:00
a.m. on January 2, 2004. According to appellant, a female friend called him
around 3:00 a.m. to meet her at the Chapultepec Restaurant on Richmond Avenue.
Appellant admitted that when he was stopped a short time later by Officer
Ciers, he told Officer Ciers he was on his way to his girlfriend=s home and that he
said nothing about going to Chapultepec Restaurant. Also, appellant testified
that at the time he was arrested, he was employed at The Cheesecake Factory and
Macy=s. However, when
he was stopped by Officer Ciers, appellant told Officer Ciers he worked at
Dillards. During his trial testimony, appellant initially denied having told
Officer Ciers he had taken Vicodin; however, after the videotape taken by the
camera in Officer Ciers= patrol car was played, appellant admitted
he had indeed told Officer Ciers he had taken Vicodin. Appellant admitted he
did not know he was driving ninety-two miles per hour when he was stopped by
Officer Ciers. Finally, appellant admitted that, while he was waiting in the
back of Officer Ciers= patrol car, he repeatedly asked Officer
Ciers to give him a break and call him a cab.








Appellant was charged with felony DWI with two prior DWI
convictions as the jurisdictional enhancements.[7]
The State also sought sentence enhancement pursuant to Texas Penal Code section
12.42(d), the habitual felony offender statute.[8]
Tex. Pen. Code Ann. ' 12.42(d). The
jury found appellant guilty as charged. The trial court deferred sentencing
pending completion of a pre-sentence investigation. Prior to the pre-sentence
investigation hearing, appellant filed a motion to dismiss the sentence
enhancements on the basis the felony offender statute violated the due process
and equal protection clauses of the Texas and United States constitutions and
constituted cruel and unusual punishment under the Texas and United States
constitutions. The trial court denied the motion. During the pre-sentence
investigation hearing, the State admitted into evidence certified copies of the
judgment and sentence in Appellant=s 1991 robbery and
2001 felony DWI convictions. Appellant=s counsel stated
specifically that he had no objection to the admission of the prior
convictions. At the conclusion of the pre-sentence investigation hearing, the
trial court sentenced appellant to twenty-five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice, the
minimum sentence under section 12.42(d). This appeal followed.

Discussion

I.        Factual
Insufficiency of the Evidence

In his first issue on appeal, appellant argues the evidence
is factually insufficient to sustain a verdict of guilty as to the intoxication
of appellant.[9]
We disagree.

A.      Standard
of Review

When evaluating a challenge to the factual sufficiency of
the evidence, we review all of the evidence in a neutral light and inquire
whether the jury was rationally justified in finding guilt beyond a reasonable
doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004). The evidence may be factually insufficient in two ways: (1) when
considered by itself, the evidence may be too weak to support a finding of
guilt beyond a reasonable doubt; and (2) when balanced against the evidence
supporting the verdict, the contrary evidence may be so strong that the
beyond-a-reasonable-doubt standard could not have been met. Id. at 484B85. In conducting
the factual-sufficiency review, we must employ appropriate deference so we do
not substitute our judgment for that of the fact finder. Id. at 481B82. Our evaluation
should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). In conducting a factual-sufficiency
review, we must discuss the evidence appellant claims is most important in
allegedly undermining the jury=s verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

 








B.      The
Evidence is Factually Sufficient to Support Appellant=s Conviction

To support appellant=s conviction for
felony DWI, the State was required to prove appellant operated a motor vehicle
in a public place while intoxicated and he had two prior convictions for DWI. Tex. Pen. Code Ann. '' 49.04(a),
49.09(b)(2). The term Aintoxicated@ means (1) not
having the normal use of mental and physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of those substances, or any other substance into the body, or (2)
having an alcohol concentration of 0.08 or more. Tex. Pen. Code Ann. ' 49.01(2) (Vernon
2003). Evidence of intoxication may include (1) slurred speech, (2) bloodshot
eyes, (3) the odor of alcohol on the person, (4) the odor of alcohol on the
breath, (5) unsteady balance, or (6) a staggered gait. See Cotton v. State,
686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985).

Initially, we review the record for evidence supporting the
guilty verdict. This evidence, recounted above, when viewed in a neutral light
and standing by itself, is factually sufficient to support appellant=s conviction.
See Zuniga, 144 S.W.3d at 484B85.








Next, we must balance the evidence supporting the verdict
with the contrary evidence to determine if the contrary evidence is strong
enough that the beyond-a-reasonable-doubt standard could not have been met. Id.
In his brief, appellant points out evidence which, in appellant=s view, weighs
against the guilty verdict. According to appellant, this evidence includes: (1)
Officer Ciers not being certified to administer the HGN test and an
inexperienced officer with only two years= service with HPD;
(2) Officer Ciers administered only the HGN test to appellant and not
additional field sobriety tests; (3) Officer Ciers found no alcohol in the
vehicle; (4) appellant=s denial at the scene that he had been
drinking alcohol; (5) the fact no video of appellant was taken at the police
station; (6) Officer Mock=s testimony that appellant knew and
understood the legal warnings given to him prior to the breath test; (7) the
effect dental problems and ketones could have on a breath test; and (8) Viser=s supposed
testimony that the Intoxilyzer 5000 was not operating properly a few days before
the test.[10]

The jury is the sole judge of the facts, the credibility of
the witnesses, and the weight to be given the evidence. Wyatt v. State,
23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29
S.W.3d 148, 151B52 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  The jury was free to consider any
inconsistencies in appellant=s testimony and to evaluate his
credibility accordingly. See Johnson v. State, 23 S.W.3d 1, 8
(Tex. Crim. App. 2000). In addition, the jury may believe or disbelieve all or
part of any witness=s testimony. Jones v. State, 984
S.W.2d 254, 258 (Tex. Crim. App. 1998).  Reconciliation of any conflicts in the
evidence falls within the exclusive province of the jury. Heiselbetz v.
State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Again, we have reviewed the entire record. Based on this
record, we cannot say the evidence contrary to the verdict is so overwhelming
that the beyond-a-reasonable-doubt standard could not have been met. See
Zuniga, 144 S.W.3d at 484B85.  As the evidence is factually
sufficient to support appellant=s conviction, we overrule appellant=s first issue.

II.       The
State Properly Used Appellant=s 1989 DWI
Conviction to Enhance the Charge to Felony DWI








In his second issue, appellant argues the State=s use of appellant=s December 7, 1989
DWI conviction to enhance the charge against appellant to felony DWI violates
Texas Penal Code section 49.09(e) as the conviction occurred more than ten
years before the offense at issue in this appeal. Tex. Penal Code Ann. ' 49.09(e) (Vernon
2003).

The Court of Criminal Appeals recently interpreted and
applied the ten-year rule in Getts v. State, 155 S.W.3d 153, 155B56 (Tex. Crim.
App. 2005). In order to exclude a prior conviction from use for jurisdictional
enhancement, all three conditions of section 49.09(e) must be met: (1) the
prior conviction must be final; (2) the current offense must have been
committed more than ten years after the latest date determined under section
49.09(e)(2); and (3) the defendant must not have been convicted of any other
intoxication related offense within ten years of the latest date under section
49.09(e)(2). Id. at 156B57. The latest date under section
49.09(e)(2) for measuring the expiration of more than ten years is either the
date of judgment of the prior conviction, the date of discharge from community
supervision, the date of completion of parole, or the date the defendant
completed serving a term of confinement or imprisonment for the prior
conviction. Id. at 156.

No matter what date is considered for appellant=s 1989 conviction,
the latest possible date under section 49.09(e)(2) would still be well within
ten years of his next DWI conviction in 1995. Tex.
Pen. Code Ann. ' 49.09(e)(3). Therefore, under Getts,
appellant=s 1989 conviction failed to meet all three conditions
of section 49.09(e) and was available to enhance the offense at issue in this
appeal to felony DWI. We overrule appellant=s second issue.

III.      Appellant=s Punishment Was
Properly Enhanced Under the Texas Penal Code=s Habitual Felony
Offender Statute








In his third issue, appellant argues the State improperly
used a prior misdemeanor DWI conviction to enhance both the charged offense to
a felony and to enhance his punishment, which is prohibited under Texas Penal
Code, section 49.09(g). Tex. Pen. Code
Ann. ' 49.09(g) (Vernon 2003).[11]
The two prior DWI convictions alleged as elements of the offense at issue in
this appeal were a December 9, 1989 misdemeanor conviction and an August 23,
1995 felony conviction. For punishment enhancement purposes under Texas Penal
Code section 12.42(d), the indictment alleged appellant had previously been
convicted of felony DWI on May 14, 2001 and robbery on August 12, 1991. See
Tex. Pen. Code Ann. ' 12.42(d).
Appellant argues his 1989 misdemeanor conviction was improperly used to enhance
both the charged offense (raising it from a misdemeanor charge to a felony
pursuant to section 49.09(b)(2)) and his punishment because the same 1989
misdemeanor conviction was used to enhance his May 14, 2001 conviction to a
felony. We disagree.

Initially, we note appellant did not object to the
admission of the two prior felony convictions. In fact, appellant=s trial counsel
specifically stated he did not have any objections to the admission of the
prior convictions. To preserve an issue for appellate review, a party is
required to show (1) a timely complaint was made to the trial court, bringing
the issue to the trial court=s attention; and (2) the trial court ruled
on the party=s complaint, or the trial court refused to rule and
the party objected to that refusal. Tex.
R. App. P. 33.1(a). This requirement reflects the policy that issues
should initially be presented to the trial court so as to provide the trial
court with an opportunity to prevent error. Bader v. State, 15
S.W.3d 599, 603 (Tex. App.CAustin 2000, pet. ref=d.). Accordingly,
we hold appellant has not preserved this issue for appellate review. James
v. State, 997 S.W.2d 898, 901 (Tex. App.CBeaumont 1999, no
pet.).








Even if appellant had preserved this issue for appellate
review, the result would be the same. The State could not have used the 1989
conviction to enhance appellant=s punishment for felony DWI because the
1989 conviction was a misdemeanor. Only two prior felony convictions can be
used to enhance the punishment for felony DWI. Tex. Pen. Code Ann. ' 12.42(d); Perez
v. State, 124 S.W.3d 214, 215 (Tex. App.CFort Worth 2002,
no pet.); Carroll v. State, 51 S.W.3d 797, 800 (Tex. App.CHouston [1st
Dist.] 2001, pet. ref=d.).

Elevating a misdemeanor to a felony offense by using a
previous DWI conviction does not enhance punishment, but instead creates an
entirely new offense and vests the district court with jurisdiction. Carroll,
51 S.W.3d at 799 (citing Gibson v. State, 995 S.W.2d 693, 696 (Tex.
Crim. App. 1999)). Therefore, the 2001 felony conviction is a separate and
distinct offense from the 1989 misdemeanor conviction. Perez, 124
S.W.3d at 216 (citing Gibson, 995 S.W.2d at 696). The State was not
required to plead or prove the 1989 misdemeanor  conviction to use the 2001
felony DWI conviction to enhance appellant=s punishment. Id.
at 216. Accordingly, the State did not improperly use the 1989 misdemeanor DWI
conviction when it alleged the 2001 DWI conviction in the indictment to enhance
appellant=s punishment. Id.; Carroll, 51
S.W.3d at 801. We overrule appellant=s third
issue.      

IV.     Appellant=s Sentence Does
Not Violate the Prohibition Against Cruel and Unusual Punishment

In his fourth issue on appeal, appellant argues his
punishment at twenty-five years= confinement for a crime in which no
person or property was harmed violates the doctrine of proportionality and is
therefore cruel and unusual punishment prohibited by both the Texas and United
States constitutions. The State=s initial response to this issue is that
appellant waived this issue as appellant never objected in the trial court to
his sentence.

A.      Waiver








The State correctly observes that, to preserve a complaint
for appellate review, a party must have presented to the trial court a timely
request, objection, or motion that states the specific grounds for the desired
ruling if they are not apparent from the context of the request, objection, or
motion. Tex. R. App. P. 33.1(a)(1);
Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op.
on reh=g). The State
continues that the trial court must have ruled on the request, objection or
motion, either expressly or implicitly. Tex.
R. App. P. 33.1(a)(1).

On November 5, 2004, the same day as the pre-sentence
investigation hearing, appellant filed his Motion to Dismiss Enhancements. In
his motion, appellant argued that a minimum sentence of twenty-five years in
the penitentiary for a crime ordinarily punished as a misdemeanor, violated the
United States and Texas constitutions as being cruel and unusual punishment. In
addition, appellant=s counsel raised this issue orally with
the trial court during the November 5, 2004 hearing. The trial court denied
appellant=s motion that same day. While appellant did not use
the term Adoctrine of proportionality,@ the meaning was
clear to the trial court. We hold appellant informed the trial court of the
basis of his complaint at a time when the trial court could do something about
it, thereby preserving the issue for appellate review. See Lankston v. State,
827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

B.      Appellant=s Sentence Does
Not Violate the Doctrine of Proportionality and is Not Cruel and Unusual
Punishment

Relying primarily on Solem v. Helm, 463 U.S. 277,
103 S.Ct. 3001 (1983), appellant argues that because he did not harm anyone or
damage any property, his sentence is so disproportionate to his crime, which he
mislabels as misdemeanor DWI, that it constitutes cruel and unusual punishment.[12]
We disagree.








The Eighth Amendment forbids only extreme sentences that
are grossly disproportionate to a crime. Solem, 463 U.S. at 288; 103
S.Ct. 3009. A sentence is grossly disproportionate to the crime only when an
objective comparison of the gravity of the offense against the severity of the
sentence reveals the sentence to be extreme. Hicks v. State, 15
S.W.3d 626, 632 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). Only if the
reviewing court determines the sentence is grossly disproportionate to the
offense will the reviewing court then consider the remaining Solem
factors and compare the sentence to similar crimes in the same and different
jurisdictions. Id.

Appellant=s offense was not, as he argues in his
brief, a misdemeanor, but a felony. In addition, appellant=s sentence was not
based on his conduct in this case alone. Instead, appellant=s sentence was
based on the habitual felony offenders statute. Under a recidivist statute, a
sentence is based not merely on that person=s most recent
offense but also on the propensities he has demonstrated over a period of time
during which he has been convicted of and sentenced for other crimes. Id.
(citing Rummel v. Estelle, 445 U.S. 263, 284, 100 S.Ct. 1133,
1144 (1980)). A state with a recidivist statute is not required to treat a
defendant as if an offense was his first but is entitled to place upon the
defendant the onus of one who is simply unable to bring his behavior into
conformance with the criminal laws of the state. Id. The primary goals
of a recidivist statute are to deter repeat offenders and, at some point in the
life of one who repeatedly commits criminal offenses serious enough to be
punished as felonies, to segregate that person from the rest of society for an
extended period of time. Id. The point at which a recidivist will be
deemed to have demonstrated the necessary propensities and the amount of time
that recidivist will be isolated from society are matters largely within the
discretion of the punishing jurisdiction. Id. (citing Rummel, 445
U.S. at 285, 100 S.Ct. at 1145).








Appellant has five prior DWI convictions, two of which were
felonies. In addition, appellant has felony convictions for possession of a
controlled substance and robbery. Appellant was not released from prison on his
last DWI conviction until March 4, 2003, less than a year before his arrest on
the current charge.  In addition, appellant testified he did not even seek to
change his conduct, unsuccessfully it turns out, until after his fifth DWI
conviction. In other words, appellant has demonstrated a prolonged and
pronounced inability to bring his conduct into conformity with the criminal
laws of the State of Texas. If the trial court assesses punishment within the
statutorily prescribed limits, the punishment is not cruel and unusual and
generally will not be disturbed on appeal. Buerger v. State, 60
S.W.3d 358, 365 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (citing
Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)). The
range of punishment for conviction as an habitual felony offender with two
prior convictions is twenty-five to ninety-nine years, or life. Tex. Pen. Code Ann. ' 12.42(d). The
trial court sentenced appellant to twenty-five years= confinement, the
minimum sentence under the habitual offenders statute. We do not find appellant=s sentence grossly
disproportionate to the offense he committed. As we do not find appellant=s sentence to be
grossly disproportionate to his crime, we do not examine the remaining Solem
factors and the effect, if any, they might have on appellant=s
disproportionality issue. We overrule appellant=s fourth issue.

Conclusion

Having overruled all of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed August 17, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  There was disputed testimony regarding the quantity
of Nyquil appellant consumed that evening. Officer Ciers testified appellant
voluntarily told him he had consumed eight bottles of Nyquil. Appellant
testified he believed he told Officer Ciers that he consumed only oneBAa@B bottle of
Nyquil.





[2]  Officer Ciers testified signs of intoxication police
officers are trained to look for include bloodshot eyes, strong alcohol odors,
slurred speech, weaving while driving, speeding, and inability to maintain a
single lane of traffic. 





[3]  After moving to a gas station parking lot, Officer
Ciers asked appellant if he could walk a line. Appellant, again citing his bad
knees, said he could not.





[4]  Officer Mock was first certified as an intoxilyzer
operator in 1985 and he is required to be re-certified each year. The
fifteen-minute observation period is part of the breath-test procedure to
assure the suspect does not place anything in his mouth or belches or does
anything that might invalidate the test result. Officer Mock had also received
training in recognizing intoxicated drivers.





[5]  Viser has a bachelor=s degree in biology and had worked in the Houston Crime Laboratory for
twelve years at the time of appellant=s
trial. Viser received extensive training to become a technical supervisor of
the breath-test program, and he was first certified as a technical supervisor
in 1995. Viser is required to renew his certification annually.





[6]  Retrograde extrapolation is a scientific theory
that, based on certain known facts, including a subject=s alcohol concentration at a certain point in time,
the subject=s alcohol concentration at either an earlier or later
time can be determined. Viser did testify there were events that could lead to
false positives on the breath test. According to Viser, cavities or recent
dental work could hold alcohol in the mouth for a short time period ranging
from five to eight minutes by which time it has dissipated. In addition, reflux
or belches could impact the test results. However, according to Viser, the
Intoxilyzer 5000 is designed to pick up this residual mouth alcohol and
invalidate the test. Viser also testified the presence of acetone (also known
as ketones) in the subject could lead to false positives. According to Viser,
the human body produces ketones in limited circumstances, such as after
prolonged fasting, or if a person is on a high protein diet or a diabetic. Once
again, Viser testified the Intoxilyzer 5000 is designed to pick up the presence
of any ketones and invalidate the test. Finally, Viser testified that high
temperatures in the testing room could have a minimal impact on the test
results. However, that temperature would have to be greater than ninety-eight
degrees Fahrenheit. We have searched the entire record and can find no evidence
that (1) appellant belched in the five to eight minutes prior to the
breath-test; (2) appellant consumed alcohol which could have remained in his
cavities or dental work in the five to eight minutes before the breath-test;
(3) appellant suffers from reflux or diabetes; (4) the temperature in the room
where appellant was tested was ninety-eight degrees Fahrenheit or above; (5)
appellant had been on a prolonged fast or on a high protein diet prior to the
breath-test. 





[7]  The convictions used were a misdemeanor conviction
in 1989 and a felony conviction in 1995.





[8]  The convictions used here were a felony conviction
for DWI in 2001 and the 1991 robbery conviction.





[9]  As a factual-sufficiency review begins with the
presumption that the evidence supporting the jury=s verdict is legally sufficient, and because appellant challenges only
the factual sufficiency of the evidence, he effectively concedes that the
evidence is legally sufficient to sustain the conviction. See Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).





[10]  Many of appellant=s
assertions of fact are inaccurate. Officer Ciers testified he was a ten year
veteran of the HPD and had served two years in the traffic division at the time
of appellant=s arrest. In addition, he had been trained not only on
how to handle traffic stops of persons suspected of DWI, but also received
training specifically in the administration of the HGN test. In addition,
Officer Ciers offered an explanation for his decision not to administer
additional field sobriety tests on appellant prior to placing him under arrest,
as well as the reason no video was taken of appellant at the police station.
Appellant=s on-the-scene statement that he had not been drinking
was directly contradicted by his sworn testimony at trial that he had consumed
two beers and at least a single bottle of Nyquil cold medicine. Finally, Viser
did not testify the Intoxilyzer 5000 machine was not operating properly on
December 26, 2003. Instead he testified the machine gave him a Areference out of tolerance@ result, which resulted from his failure to allow the
machine to warm up sufficiently prior to the test. Viser testified that after
he allowed the machine to completely warm up, it was operating properly.  





[11]   Texas Penal Code, section 49.09(g) provides: AA conviction may be used for
purposes of enhancement under this section or enhancement under Subchapter D,
Chapter 12, but not under both this section and Subchapter D.@ Tex. Pen. Code Ann. ' 49.09(g) (Vernon 2003).





[12]  In Solem, the Supreme Court held that
although a sentence may be within the range permitted by statute, it
nonetheless may run afoul of the Eight Amendment prohibition against cruel and
unusual punishment. Solem, 463 U.S. at 303; 103 S.Ct. at 3016.